Jill ENGQUIST, as parent and natural guardian of Amber Engquist, a minor, Appellant,

v.

Steven LOYAS, et al., Respondents.

No. A09–1760.

Court of Appeals of Minnesota.

Aug. 17, 2010.

Roger L. Kramer, Kramer & Short, LLC, Mendota Heights, MN, for appellant.

LeAnne D. Miller, Rajkowski Hansmeier, Ltd., St. Cloud, MN, for respondents.

Considered and decided by KALITOWSKI, Presiding Judge; WRIGHT, Judge; and BJORKMAN, Judge.

## OPINION

KALITOWSKI, Judge.

Appellant Jill Engquist, on behalf of her daughter Amber Engquist, challenges the district court's judgment following a jury trial on Amber's dog-bite claim. Appellant argues: (1) the district court abused its discretion in formulating the jury instructions on provocation; (2) the district court erred by denying appellant's motion for judgment as a matter of law (JMOL) on the issue of provocation; and (3) the jury verdict on damages is contrary to the evidence.

## FACTS

On July 11, 2006, nine-year-old Amber Engquist was playing at the house of respondents Steven and Christina Loyas with their daughter, Gabrielle, when respondents' dog bit her face. Amber and Gabrielle were playing hide and seek in respondents' basement with three other children. Amber and Gabrielle hid in a dark crawl space under the basement stairs. Amber and Gabrielle called respondents' two-year-old dog, Bruno, to come into the space with them. Bruno came into the space on his own and sat down in front of the girls. The girls sat in the crawl space with Bruno for approximately five minutes and did not restrain or prevent Bruno from leaving the crawl space during this time. Amber reached out into the dark to pet Bruno and to put her arm around him. When Bruno started to growl, Amber withdrew her arm and backed away. Bruno then lunged at Amber, biting her eyelid and the area above her eyebrow and puncturing her neck with his claws. Amber underwent surgery to

reattach her eye lid and received stitches on her brow.

Amber had met Bruno for the first time that day. Because respondents had no reason to believe that Bruno was dangerous, respondents did not provide Amber with any instructions or warnings regarding playing with Bruno. In fact, respondents and Gabrielle testified that before this incident, Bruno, a black lab mix, was well behaved, was not afraid of children, did not have any health problems or sensitivities, and had never bitten or attacked anyone. Respondents' three children had petted and hugged Bruno many times.

Amber's eyesight was not affected as a result of her injuries. But because Bruno was not vaccinated, she underwent a series of painful rabies injections. And for the rest of the summer, she stayed out of the sun to prevent the scarring from worsening. Amber also testified to experiencing significant emotional distress over the incident, having nightmares, fear of dogs, and anxiety over her appearance. She stated that since the incident, she gets "bad headaches where [she] can't really concentrate as much," and that when she looks at the scar in the mirror, she flashes back to the incident, though with time she has "kind of got[ten] used to it."

Appellant sued respondents under Minnesota's dog-bite statute, Minn.Stat. § 347.22 (2008). At the end of a two-day trial, appellant moved for JMOL on the issue of provocation, a defense under the statute. The district court denied the motion and instructed the jury on the issue. The jury found that Amber provoked the dog, precluding her from collecting any damages under the statute. In addition, the jury determined Amber's damages as follows: $15,000 for past pain, disability, disfigurement, and emotional distress; $6,419.51 for past medical expenses; $0 for past wage loss for appellant; $0 for future

pain, disability, disfigurement, and emotional distress; and $3,000 for future medical expenses.

## ISSUES

1. Did the district court abuse its discretion in formulating the jury instructions on provocation?

2. Did the district court err by denying appellant's motion for JMOL on the issue of provocation?

3. Was the jury verdict on damages contrary to the evidence?

## ANALYSIS

### I.

Appellant argues that the district court abused its discretion in formulating the jury instructions. Because the jury instructions did not provide an accurate statement of the defense of provocation under the dog-bite statute, we agree.

 The district court has broad discretion in determining jury instructions, and this court reviews the jury instructions for an abuse of discretion. *Hilligoss v. Cargill, Inc.*, 649 N.W.2d 142, 147 (Minn. 2002).

> An instruction that is so misleading that it renders incorrect the instruction as a whole will be reversible error, but a jury instruction may not be attacked successfully by lifting a single sentence or word from its context. Where instructions overall fairly and correctly state the applicable law, appellant is not entitled to a new trial.

*Id.* (quotation and citation omitted).

**Minnesota Precedent**

Minnesota's dog-bite statute provides, in relevant part: "If a dog, without provocation, attacks or injures any person who is acting peaceably in any place where the

person may lawfully be, the owner of the dog is liable in damages to the person so attacked or injured to the full amount of the injury sustained." Minn.Stat. § 347.22. In *Seim by Seim v. Garavalia,* the Minnesota Supreme Court determined that section 347.22 provides for absolute strict liability on the part of the dog owner, subject to two defenses set forth in the statute: (1) provocation, and (2) failure of the injured person to conduct herself peacefully while in a lawful place. 306 N.W.2d 806, 812 (Minn.1981). The supreme court concluded, therefore, that the district court erred by allowing the defendants to submit the defense of contributory negligence to the jury. *Id.* at 812–13.

Notably, the defendants in *Seim* did not challenge the district court's determination that the minor plaintiff did not provoke the dog when she petted it, causing it to bite her, after the defendants' son had assured her that the dog did not bite. *Id.* at 808–09. But the supreme court later examined the provocation defense in *Bailey by Bailey v. Morris,* 323 N.W.2d 785 (Minn.1982). In *Bailey,* the minor plaintiff reached out to pet her neighbor's dog, causing it to bite her. 323 N.W.2d at 787. Significantly, the defendant had warned the plaintiff to be careful, as the dog had just given birth to a litter of puppies, and two other children testified that the dog was growling when the plaintiff approached it. *Id.* at 786–87. The district court denied the plaintiff's motion for a directed verdict under section 347.22, and a jury found that the plaintiff provoked the dog. *Id.*

On appeal, the plaintiff argued that petting a dog cannot constitute provocation as a matter of law, because provocation must be intentional. *Id.* at 787. But the supreme court determined that the statutory defense of provocation is an issue of fact to be submitted to the jury. *Id.* And because "the jury could believe that [the plaintiff]

approached a growling dog and, despite warnings about the dog's nervous condition, attempted to pet it," the supreme court affirmed the jury's finding that the plaintiff provoked the dog. *Id.* at 787–88. The *Bailey* court distinguished the facts from those of *Fake v. Addicks,* 45 Minn. 37, 47 N.W. 450 (1890), in which the supreme court determined that the plaintiff's "inadvertently" stepping on the dog's tail during a scuffle did not constitute provocation. *Id.* at 787, 323 N.W.2d 785

This court addressed the issue of provocation in a dog-bite case in *Grams v. Howard's O.K. Hardware Co.,* 446 N.W.2d 687 (Minn.App.1989), *review denied* (Minn. Dec. 15, 1989). In *Grams,* the 22–month-old plaintiff was visiting a hardware store with her grandmother when she petted the clerk's dog, causing it to bite her. 446 N.W.2d at 688. The dog was in pain due to hip dysplasia, but the clerk did not inform the victim or her grandmother of this. *Id.* The plaintiff had petted the dog without incident during an earlier visit to the store that day, and the clerk had assured the plaintiff's grandmother that the dog did not bite. *Id.* The jury found that the plaintiff provoked the dog under section 347.22, but this court reversed on the ground that *"Bailey* permits a finding of provocation for a voluntary act but suggests that inadvertent acts are not a proper basis for finding provocation." *Id.* at 689. The *Grams* court reasoned that in *Bailey,* the voluntary act involved "an apparent hazard of provocation, given evidence that the dog was nervous and growling," but in *Grams,* there was no evidence to show that the plaintiff appreciated any danger or that the plaintiff's act "was other than inadvertent." *Id.* at 689–90. The *Grams* court concluded that a finding of provocation "would improperly expand the application of *Bailey* and obliterate the difference between absolute statutory lia-

bility and common law liability." *Id.* at 690.

**Jury Instructions**

█ Here, the district court provided the following jury instruction on the issue of provocation: "You will be asked whether Amber Engquist provoked the dog to bite her by a deliberate voluntary act. Provoke means to engage in an act which excites, stimulates, irritates, arouses, induces or enrages." We conclude, based on Minnesota caselaw, that the district court's jury instructions did not provide an accurate statement of the law.

█ In order for a jury to find provocation, the evidence must show that the plaintiff's allegedly provocative conduct was not "inadvertent" or that there was a "voluntary act involv[ing] an apparent hazard of provocation." *Grams,* 446 N.W.2d at 689. Permitting the jury to find provocation where appellant acted to "stimulate" or "excite" the dog, without more, is contrary to the holding in *Grams. See id.* at 690 ("While evidence permits an inference that the child 'stimulated' the dog by hugging or possibly sitting on it, no testimony indicates how this came about and there is no direct evidence to demonstrate that appellant's act was other than inadvertent."); *see also Fake,* 45 Minn. at 40, 47 N.W. at 452 (concluding that inadvertently stepping on a dog does not constitute provocation).

Moreover, the district court's definition of "provoke" permits a jury to determine that any deliberate act that causes a dog to react violently, for whatever reason, can constitute provocation. This is a result that vitiates the legislature's intention to provide absolute strict liability. *See Seim,* 306 N.W.2d at 812 (holding that the legislature intended to provide absolute strict liability).

Respondents note that the instruction given to the jury requires a "deliberate voluntary act," and argue that because "an inadvertent act cannot be deliberate and voluntary," the instruction properly excludes inadvertent acts. We disagree. A jury could reasonably find that Amber's putting her arm around Bruno constituted provocation because it was a "deliberate voluntary" act that "stimulated" Bruno, without considering whether Amber invited or induced the injury or whether the danger of injury was apparent to Amber.

█ Citing cases from other jurisdictions, appellant advocates for a provocation instruction that addresses the "reasonableness" or "proportionality" of the dog's response to the victim's unintentional actions. *See Kirkham v. Will,* 311 Ill.App.3d 787, 244 Ill.Dec. 174, 724 N.E.2d 1062, 1065 (2000) ("[I]t is not the view of the person provoking the dog that must be considered, but rather it is the reasonableness of the dog's response to the action in question that actually determines whether provocation exists."); *Bradacs v. Jiacobone,* 244 Mich.App. 263, 625 N.W.2d 108, 115 (2001) (providing that the victim did not provoke the dog where the dog's reaction was not a proportional response to the victim's actions and where the victim had no warning of risk). Under the Illinois provocation analysis, provocation depends on the perspective of the dog, focusing on how an average dog would respond to a victim's allegedly provocative act. *Kirkham,* 244 Ill.Dec. 174, 724 N.E.2d at 1067. But Minnesota caselaw provides that "[t]he statutory defense of provocation necessarily relates only to *plaintiff's* conduct with respect to the dog." *Bailey,* 323 N.W.2d at 787.

█ An example of an instruction that more accurately reflects Minnesota law on the defense of provocation is as follows: A person provokes a dog when, by voluntary

conduct, and not by inadvertence, the person invites or induces injury. Mere physical contact with a dog, or conduct that results in stimulating a dog, does not constitute provocation unless the danger of injury is apparent when the person acts to invite or induce injury.

In conclusion, the district court's jury instruction on provocation was not an accurate statement of the law. And because the instruction on provocation was so misleading as to render incorrect the jury instructions as a whole, we reverse and remand for a new trial on liability.

## II.

■ Appellant argues that the district court erred by denying appellant's motion for JMOL on the issue of provocation. We disagree.

> [JMOL] should be granted: only in those unequivocal cases where (1) in light of the evidence as a whole, it would clearly be the duty of the [district] court to set aside a contrary verdict as being manifestly against the entire evidence, or where (2) it would be contrary to the law applicable to the case.

*Jerry's Enters., Inc. v. Larkin, Hoffman, Daly & Lindgren, Ltd.,* 711 N.W.2d 811, 816 (Minn.2006) (quotation omitted). This court reviews the district court's denial of a JMOL motion de novo, viewing the evidence in the light most favorable to the prevailing party. *Bahr v. Boise Cascade Corp.,* 766 N.W.2d 910, 919 (Minn.2009).

■ As discussed above, the defense of provocation is an issue of fact to be determined by the jury. *Bailey,* 323 N.W.2d at 787. Here, we cannot say that the facts unequivocally required the district court to grant JMOL in favor of appellant, taking the issue from the jury. Thus, the district court did not err by denying appellant's motion for JMOL.

## III.

■ Appellant argues that the jury verdict on damages was contrary to the evidence viewed as a whole. We disagree.

■ A reviewing court should not set aside a verdict on damages "unless it is manifestly and palpably contrary to the evidence viewed as a whole and in the light most favorable to the verdict." *Raze v. Mueller,* 587 N.W.2d 645, 648 (Minn.1999) (quotation omitted). "An award will not be overturned because an appellate court might have allowed a more generous recovery or because another jury might return a larger verdict." *Tuominen by Tuominen v. Waldholm,* 301 Minn. 492, 493, 221 N.W.2d 709, 710 (1974). But if damages are inadequate, and the record shows that they were awarded as a compromise between the right of recovery and the amount of damages, a new trial is appropriate. *Seim,* 306 N.W.2d at 813.

The jury awarded $15,000 for past pain, disability, disfigurement, and emotional distress and $0 for future pain, disability, disfigurement, and emotional distress. Appellant argues that this award is insufficient and reflects the prejudice caused by the incorrect jury instruction on the issue of provocation. We disagree.

Although another jury might have awarded more for past pain and suffering based on the evidence regarding the nature of Amber's injuries, painful rabies shots, emotional distress, and having to stay indoors for the summer, we cannot say that an award of $15,000 is manifestly and palpably contrary to the evidence. Furthermore, the jury's failure to award any damages for future pain and suffering is supported by the following evidence in the record: (1) Amber's testimony that, with the exception of headaches, the injuries no longer cause her pain; (2) Amber's testimony that her emotional well-being has improved since the incident; and (3)

evidence that Amber has not received medical treatment for her injuries since the stitches were removed. Finally, other than mere speculation, appellant has provided no evidence that the jury's determination regarding provocation affected its award of damages.

Appellant also argues that because a plastic surgeon testified that Amber's scarring is permanent, the jury's failure to award damages for future disfigurement is error as a matter of law. But appellant fails to provide any support for this contention. The jury had the opportunity to observe the appearance of Amber's scars up close, and the district court noted in its order denying appellant's motion for a new trial that the scarring was "barely visible." Additionally, the jury awarded $3,000 for revision surgery that would further reduce the appearance of the scarring. We conclude, therefore, that the jury's verdict on damages is not manifestly and palpably contrary to the evidence as a whole.

### DECISION

Because the issue of provocation is a question of fact for the jury unless the evidence is unequivocal, the district court did not err by denying appellant's motion for JMOL. But because the district court gave the jury an instruction that was not an accurate statement of the defense of provocation under the dog-bite statute, we reverse and remand this matter for a new trial on liability. Finally, because we conclude that the jury's award of damages is not manifestly and palpably contrary to the evidence as a whole, we affirm the jury's verdict on damages.

**Affirmed in part, reversed in part, and remanded.**